[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This vigorously contested dissolution matter was initiated by the summons and complaint of Charlene Strong (hereinafter "plaintiff") returnable on September 24, 1990 against Lynn Strong (hereinafter "defendant") alleging an, irretrievable breakdown of the marriage of the parties, and claiming, among other things, a dissolution, custody of the minor child, support and a division of marital assets. An answer and cross-complaint was filed without objection on June 8, 1992 by the defendant.
Both parties were well represented by counsel throughout the proceedings and during the trial.
The file reflects that pendente lite orders were entered with regard to custody and support. In addition, various restraining orders were granted pendente, lite including an order restraining the defendant "from encumbering, conveying, selling, transferring, spending or otherwise dissipating monies from the Electric Boat Credit Union, Account No. 600073020, his wholelife insurance policies, his profit sharing plan at United Paper, an OSHA settlement, any IRA or Keogh plan with Prudential Insurance or any bank accounts or CD's at CSCU. The defendant may withdraw $1,200.00 from the Chelsea-Groton CD having a balance of $10,000.00 to pay his automobile insurance. Neither party may encumber or dispose of the vehicles in their respective possessions." This order was entered on March 4, 1991 with an indication that both parties were present with counsel at the time of the order.
The case was eventually claimed for the trial list and the parties appeared with counsel for trial on June 9, 1992 at Norwich. The matter was then continued to July 22, 1992 when further evidence was taken. The matter was continued to July 24, 1992 when further evidence was taken and thence to August 6, 1992 when the evidence was completed and a briefing schedule set.
At the time of the trial the parties submitted the financial affidavits required by the rules together with child support guideline worksheets, custody affidavits, and the required Department of Health services information.
During the trial, the defendant offered 18 exhibits and the plaintiff introduced 7 exhibits relating to the case. The parties submitted post-trial memoranda or claims for relief in accordance with the schedule determined by the court with the reply briefs having been received by August 21, 1992. CT Page 8658
On the basis of the evidence the court finds the allegations to the complaint to have been proven, and that the parties were married on January 17, 1979. The court further finds that both of the parties resided continuously in the State of Connecticut for twelve months next proceeding the date the filing of the complaint and, further, the marriage of the parties has broken down irretrievably.
A decree of dissolution is entered and the parties are declared each to be single and unmarried.
There was no claim by either party for periodic alimony and no alimony is ordered.
There was no dispute that it would be in the best interest of the minor child of the marriage, Allia Strong, born June 10, 1981 to be with the plaintiff/mother. The court finds that it is in the best interest of the minor child and orders custody of Allia Strong to her mother Charlene Strong pursuant to 46b-56 of the General Statutes.
The court finds that the child support guideline promulgated pursuant to General Statutes 46b-215b are applicable with regard to child support orders. In that connection, the court finds that the evidence supports the claims made by the defendant as to the correct calculation and, therefore, orders the defendant to pay to the plaintiff the sum of $110.00 per week for the support of the minor child which shall be enforced by wage execution when the defendant obtains employment. No credits will be allowed against such amount for any expenses or disbursements which may be incurred from time to time by the defendant in connection with the minor child.
The defendant is ordered to provide medical and health insurance for the minor child as available to him at his place of employment when he becomes employed. Prior, to the employment of the defendant, however, the plaintiff is ordered to provide for a continuation of the existing medical insurance for the minor child. During such time as the plaintiff continues such medical insurance, all unreimbursed or uncovered medical expenses, including orthodonture, psychological, psychiatric, optomolitical or surgical care shall be born the parties with the defendant paying 70% and the plaintiff paying 30%. At such time as the defendant assumes the responsibility for such insurance, the unreimbursed or uncovered items shall be paid equally by the parties. The defendant is ordered to notify the plaintiff and the plaintiff's attorney by written notification mailed registered or certified mail return receipt requested of the CT Page 8659 fact that he has obtained employment within ten days of the same.
Each party is ordered to notify the other of their address and telephone number of their residence in writing registered mail return receipt requested from time to time as the same may change.
The major dispute between the parties in the extensive testimony related to the claims concerning the division of assets and claims relating to the amount of visitation appropriate for the defendant.
Mrs. Strong is 45 years old. This is her third marriage. She has a high school education and has completed one year of college. She is presently attending college courses. She was getting a dissolution from her second husband at the time she met Mr. Strong. She had no children by her prior marriages, but Mr. Strong had two boys and a daughter from his prior relationships. They started living together before they were married while she was working as a waitress at Treats Bakery. He was unemployed at first. They lived together for two years before they were married in 1980. The evidence showed that the plaintiff cared for the defendant when he was injured in an automobile accident and was out of work for eight months. She had previously been employed as a secretary at Attorney Globerman's office in Norwich. Considerable testimony was offered as to the source of funds in connection with the accumulation of assets by the parties but there was no disagreement that the plaintiff provided a $5,000.00 down payment for the purchase of the Preston property which she received from her uncle. Arrangements at a local trade school assisted with the construction of their family home and they obtained a $45,000.00 loan to finance the same. The defendant became employed at United Paper and Metal during their marriage, but at the time of the marriage he had no assets, not even a car. He was indebted to Beneficial Finance Company, and Norwich City Welfare Department which were paid back during the course of the marriage.
While there was conflicting evidence with regard to the same the court finds the plaintiff was solely responsible for the setting up of the business which is now known as the Strong Maintenance Company, and that Mr. Strong made no financial contribution and provided very little assistance with regard to the same. The court finds that because of the employment of Mr. Strong, he did make some substantial contribution to the accumulation, preservation and increase in value of the assets of the parties. In the view of the CT Page 8660 court from the evidence Mrs. Strong made the major contribution by her work, organization and management of the business. The court finds from the evidence that the funds earned by Mrs. Strong at the business were used in connection with ordinary household expenses and that Mr. Strong saved most of his earnings in an account which was in his name. Mr. Strong's savings account, however, was considered by him and Mrs. Strong as the "family savings" and has from time to time been treated as such by the parties.
Mr. Strong who was 44 years old at the time of the hearing completed 11 years of public high school education and attended trade school for electrical service. He never did however obtain his civil service license. He claims some significant health problems at the time of the hearing, but the court found the witness to be less than credible on that regard especially considering testimony about his regularly playing sports activities. There is no question but that Mr. Strong has suffered injuries of various types to his back and leg over the years but notwithstanding the continuous visitations to the doctor, Mr. Strong has no plans for surgery and takes only homopathic medicine for his pain. His doctor has authorized him to be employed in light duty employment.
The plaintiff testified as to her claims that the defendant was violent towards her during the marriage and the court found her to be a credible witness in that regard. The court also credited her testimony as to the infidelity of the defendant during the course of the marriage.
As far as the cause of the breakdown of the marriage, the court finds that the credible evidence established that Mr. Strong was primarily responsible for the breakdown of the marriage, but the court acknowledges that this factor is only one of several factors and may not be overemphasized by the court.
As far as the employability, vocational skills, occupation and source of income, Mrs. Strong may have some advantage in that regard because of her having completed high school and what the court perceived to be her obvious administrative capabilities. Mr. Strong appears from the evidence in the past to have had an excellent work record with regard to earnings and has, been able to save and accumulate considerable sums taking into account the fact that he went into the marriage with no assets and some obligations.
The needs of the parties are reflected on their CT Page 8661 respective affidavits and no significance in drafting the court orders is attributable to the differences brought out in the testimony with respect to needs.
In connection with the division of the assets of the parties the court will consider carefully the factors set forth in 46b-81 and 46b-82 of the Connecticut General Statutes. In evaluating the evidence relating to those factors the court will also consider the appearance, demeanor and attitude of the witnesses as they testified during the trial. The court will also consider the interrelationship of the various orders, one to the other.
With regard to visitation the court orders that the defendant shall be permitted visitation in accordance with the following schedule:
 1. Alternate weekends from Friday at 5:00 p. m. until Sunday at 5:00 p. m.
 2. Wednesday evenings between the hours of 5:00 p. m. and 8:00 p. m. in the week in which there is no overnight visitation.
3. Alternate Federal holidays. 9 a.m. to 9 p. m.
 4. On Thanksgiving and Christmas in alternate years with defendant having visitation Thanksgiving in one year and Christmas in the following year.
 5. A separate two week period during the minor child's summer school vacation which shall be in accordance to his schedule to be designated in writing and served upon the plaintiff by registered mail prior to May 1st of each year relating to the following summer.
 6. During any school vacation during Allia's regular school year the defendant shall have, in addition to the above schedule, the opportunity to have two days visitation with Allia during the said vacation, upon giving the plaintiff two weeks advanced notice served by registered mail return receipt requested with regard to the exact days.
 7. During all visitations the defendant shall provide the plaintiff with an address and telephone number where Allia may be reached during the visitation. The plaintiff shall have telephone access during all such visitation. CT Page 8662
 8. In the event that Allia has a regularly scheduled school, sporting or extra-curricular, activity which is to occur at a time which otherwise would provide for visitation by the defendant, then, and in that event, there shall be no visitation except that the defendant shall have the right to take the child to the event and participate or attend to the extent that parental participation and attendance is appropriate.
 9. No credit or offset against child support payments shall be permitted or appropriate for any time that the minor child is with the defendant for the visitation outlined above, nor for any costs incidental to the visitation, if any.
 10. The defendant shall be responsible for transportation for all visitation.
 11. The defendant shall give the plaintiff directly two days advance notice of his intention not to take visitation at any scheduled time.
With regard to the division of assets, the defendant shall have no claim or interest with respect to the cleaning business known as Strong Maintenance or any assets utilized in connection with that business, which shall be the sole property of the plaintiff who shall be responsible for the obligations related thereto, and shall hold the husband harmless from any claims or obligations from the same.
With regard to the family residence at 57 Bunny Drive in Preston, Connecticut, the court finds the value of the same to be $133,000.00 subject to a mortgage in the approximate amount of $56,000.00. The court orders the defendant's interest to the same transferred pursuant to46b-81 of the General Statutes to the plaintiff. The plaintiff shall be solely responsible for the obligations relating to the home ownership including taxes, insurance, mortgage and operating expenses and shall hold the defendant harmless from the same.
With regard to the lot owned at 55 Bunny Drive, Preston, Connecticut, the court values the same at $36,000.00 and orders that the defendant's interest to the same be transfered to the plaintiff pursuant to 46b-81 of the General Statutes. CT Page 8663
Each party shall be entitled to retain, and shall be responsible for the costs related to, the motor vehicles shown on their respected affidavits.
The plaintiff shall be entitled to all the household furniture and furnishings located in or used in connection with the 57 Bunny Drive, Preston, Connecticut property, and shall be entitled to retain as her own the Chelsea Groton savings CD in the amount $10,000.00 and the Electric Boat Federal Credit Union savings deposits shown on her financial affidavit as well as the Prudential Insurance policy in the face amount of $50,000.00 which insures her life and has a cash surrender value $3,000.00. Also, the plaintiff shall retain as her sole property, her Merrill Lynch IRA shown in her financial affidavit having a value of $20,000.00.
The plaintiff shall continue, as trustee for Allia, Strong on the Chelsea Groton savings account in her name having a balance of approximately $11,141.29.
The defendant shall be entitled to keep and retain in his name the bulldozer which the court finds has a value of $7,000.00, a generator which the court finds has a value of $2,800.00 and a heater which the court finds has a value of $800.00. In addition the defendant shall keep and retain as his sole property the, Navy Federal Credit Union savings in the amount of $171.00 and the Chelsea Groton CD having a present balance of $2,587.00. The defendant shall keep an, retain as his sole property the Prudential 401K plan having an estimated value of $2,887.00 and the $50,000.00 Prudential Life Insurance policy shown on his affidavit as having a cash surrender value of $17,000.00. In addition, the defendant shall keep and retain as his sole property his United Paper and Metal profit sharing plan estimated as having a value of $28,000.00, and his Chelsea Groton retirement plan having an estimated value of $19,189.00.
The defendant shall name the minor child as sole, irrevocable beneficiary of the $50,000.00 life insurance policy on his life as shown on his affidavit until she reaches the age of 18, and all support obligations have been satisfied. During such period the defendant shall not hypothecate, borrow against, encumber or otherwise reduce the benefit of said policy. The defendant shall provide annually by November 15 of each year beginning in 1992 a writ, ten documentation from the company of proof of such insurance.
Each party shall provide the, other with a copy of their I.R.S. from 1040 by April 15 of each year beginning. CT Page 8664 1993 by registered or certified mail return receipt requested.
Each party shall inform the other of their address until the minor child reaches 18 years of age.
With regard to counsel fees, the court orders that each party be responsible for their own legal fees, costs and expenses.
With regard to liabilities the court orders, that each party shall be responsible for the liabilities shown on their financial affidavits, and shall hold the other harmless from the same.
Counsel for the plaintiff is ordered to prepare the judgment file.
Leuba, J.